HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>       v.<br><br>YORAM RUIMI,<br><br>                    Defendant. | Case No. 2:22-cv-01576-RAJ<br><br>**ORDER** |

This matter comes before the Court on Plaintiff United States's ("United States" or "Plaintiff") Motion to Compel. Dkt. # 22. Defendant Yoram Ruimi ("Mr. Ruimi" or "Defendant") opposes the motion, Dkt. # 23, and the United States filed a reply. Dkt. # 25. For the reasons that follow, the Court **GRANTS** the United States's Motion.

**I.    BACKGROUND**

Plaintiff United States filed this action to reduce to judgment unpaid civil penalty assessments made against Defendant for his failure to report his interest in foreign bank accounts for calendar years 2011 through 2016, as required by federal law. Dkt. # 1 (Compl.). In 2000, Defendant deposited earnings from the liquidation of his business in two bank accounts at Bank Leumi in Israel and one account at Pictet Bank in

ORDER  - 1

Switzerland. *Id.* ¶ 13. He later transferred the funds in Pictet Bank to Baumann & Cie, Banquiers ("Baumann"). *Id.* ¶ 14. According to the United States, Defendant holds the Baumann account through Sonarillo Investment Group, an entity incorporated in the British Virgin Island and of which Defendant is the sole shareholder. *Id.* ¶ 15. Defendant holds one of the Bank Leumi accounts in his own name, and the other is held via the Lauren Group, an entity incorporated in Belize and of which Defendant is the only shareholder. *Id.* ¶ 16, 17.

Mr. Ruimi did not report his interest in these foreign bank accounts from 2011 to 2016 and failed to timely file Report of Foreign Bank and Financial Accounts (commonly known as an "FBARs") as required by 31 U.S.C. § 5314. *Id.* ¶ 7. Consequently, the Secretary of the Treasury assessed civil penalties against Defendant in the amount of $3,240,780. *Id.* ¶ 46. The United States now seeks a judgment in the amount of $3,623,014.46, which includes the unpaid balance for FBAR penalties, a late payment penalty, and applicable fees and interest, less any payments. *Id.* ¶ 49.

On May 15, 2023, the United States served on Defendant its First Set of Interrogatories and Requests for Production (RFPs). Dkt. # 22-1 ¶ 2 (Declaration of Julia M. Glen ISO Motion), Ex. A. Counsel for the United States also provided Defendant with contact information and proposed language to assist him in requesting records from domestic legal counsel of the foreign banks with which Defendant held accounts. *Id.* Also on May 15, the United States issued a third-party subpoena to Sandy Ekelman, a friend of Defendant who the United States alleges coordinated between Mr. Ruimi and his CPA in the preparation of Mr. Ruimi's tax returns. *Id.* ¶ 3; Dkt. # 1 ¶ 23. In response to the subpoena, Ms. Ekelman produced documents related to tax years 2000-2007, stated that she had no other tax returns or financial documents, but indicated that she mailed documents to Mr. Ruimi's residence in Israel four years ago at his request. Dkt. # 22-1 ¶ 4. On June 4, 2023, Defendant served his responses to the United States's discovery requests which, according to Mr. Ruimi, included all bank statements and tax returns he

ORDER - 2

had in his possession at that time for the years that FBAR penalties were assessed. *Id.*, Ex. B; Dkt. # 22 at 2. On July 6 and August 3, counsel for the United States spoke with Mr. Ruimi's counsel regarding his discovery responses and Defendant's review of documents produced by foreign banks. *Id.* ¶ 6. After reaching out to his contacts at Baumann and Bank Leumi to request account opening documents and additional bank statements for years 2011 to 2016, Dkt. # 23 at 2, Mr. Ruimi supplemented his responses to the United States's RFPs on August 3. *Id.* ¶ 9.

On August 21, 2023, the United States sent a deficiency letter to Defendant that identified several alleged deficient responses. *Id.* ¶ 14, Ex. E. Specifically, the United States alleged that Defendant's answers to RFP Nos. 1, 2, 3, 5, 6, and 7 were deficient. *Id.* Defendant requested an extension to review documents and then provided supplemental responses on September 8. *Id.* ¶ 11, 12. However, the United States filed the instant motion to compel on October 6, and at present, contends that Defendant's production remains deficient. Dkt. # 22.

**II.    LEGAL STANDARD**

The Court has broad discretion to control discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011); *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). That discretion is guided by several principles. Most importantly, the scope of discovery is broad. A party must respond to any discovery request that is not privileged and that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If a party refuses to respond to discovery, the requesting party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The party who resists discovery has

the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc*., 175 F.R.D. 646, 650 (C.D. Cal. 1997).

### III.    DISCUSSION

#### A.) Foreign Bank Account Records (RFP Nos. 1, 2, 3, 5)

The United States seeks to compel Defendant's responses to RFP Nos. 1, 2, 3, and 5, which state:

> "**1.**    Please produce all records for the Leumi Accounts, including banker's notes, visit reports, account opening documents, monthly statements, annual statements, and all correspondence, including all communications regarding tax compliance, FATCA, and any requests for evidence of tax compliance."
>
> "**2.**    Please produce all records for the Baumann Account, including internal banker's notes, visit reports, account opening documents, monthly statements, annual statements, and all correspondence, including all communications involving tax compliance, FATCA, and any requests for evidence of tax compliance."
>
> "**3.**    Please produce all records for Bank Pictet Accounts, including internal banker's notes, visit reports, account opening documents, monthly statements, annual statements, and all correspondence, including all communications involving tax compliance, FATCA, and any requests for evidence of tax compliance."
>
> "**5.**    Please produce all records for all other foreign accounts in which Yoram Ruimi held a financial interest or over which Yoram Ruimi possessed signatory authority, including internal banker's notes, visit reports, account opening documents, monthly statements, annual statements, and all correspondence, including all communications involving tax compliance, FATCA, and any requests for evidence of tax compliance."

Dkt. # 22-1 Ex. A at 3. The United States defines the Leumi Accounts as "the account held at Bank Leumi with account number ending in -41 in the name of Yoram Ruimi and the account with account number ending -70 held in the name of Lauren Group." *Id.* at 2. The Baumann Account is defined as "the account held at Baumann and Cie Banquiers

with account number ending in -35 held in the name of Lauren Group." *Id.* The Bank Pictet Accounts are "any accounts in which Mr. Ruimi held a financial interest or signatory authority between January 1, 2000, and the present." *Id.* Further, the United States's RFPs refer to Credit Suisse Accounts, which are defined as "any accounts in which Mr. Ruimi held a financial interest or signatory authority between January 1, 1999, and the present." *Id.*

As to RFP Nos. 1 and 2, Defendant stated that the IRS assessed FBAR penalties against him only for 2011 to 2016 (what Mr. Ruimi calls "the years at issue"), and objected "to the extent it requests bank records outside the years at issue as overly broad, irrelevant, not likely to lead to discoverable evidence, and not proportionate to the needs of the case." Dkt. # 22-1, Ex. B at 2. Further, Defendant characterized the requests as a "fishing expedition." *Id.* Defendant provided a similar response to RFP No. 3 and noted that the Bank Pictet Accounts were not open during the "years at issue" and that FBAR penalties were assessed as to only the Leumi and Baumann Accounts. *Id.* Defendant stated that he had no responsive documents and none existed for that account. *Id.* In response to RFP No. 5, which seeks records for all foreign financial accounts, Defendant stated that he "did not have a financial interest in, or signature or other authority with respect to, any foreign financial accounts during the years at issue other than the ones upon which the FBAR penalty was asserted." *Id.*, Ex. B at 4. The United States argues that Mr. Ruimi has failed to produce all requested documents for the years 2011 to 2016, and no documents outside of that time frame. Dkt. # 22 at 6.

**B.) Communication-Related Records (RFP Nos. 6, 7, 9)**

The United States moves for an order compelling Defendant to answer RFP Nos. 6, 7, and 9, which concern Mr. Ruimi's communications with various individuals and entities.

"**6.**   Please produce a copy of the communications between you and Sandy Ekelman concerning your United States federal income tax returns

ORDER - 5

or reporting of foreign financial accounts to the United States. This request includes email correspondence, text messages, and other electronic communication as well as physical correspondence."

"**7.**     Please produce a copy of the communications between you and any CPAs, accountants, financial advisors, and other professionals regarding your United States federal income taxes or reporting of foreign financial accounts to the United States."

"**9.**     Please produce a copy of the advice you relied on that you contend supports your affirmative defenses that your failure to timely file FBARs for the calendar years at issue was not 'willful' within the meaning of 32 U.S.C. § 5321(a)(5) and/or that you had reasonable cause for failing to timely file FBARs for the calendar years at issue. *See* Dkt. 13, ¶¶ 76-77)."

Dkt. # 22-1, Ex. A at 4.

In response to RFP No. 6, Mr. Ruimi provided copies of his tax returns, Dkt. #22-1, Ex. E at 3, and indicated that he found no communications with Ms. Ekelman concerning his tax returns or foreign financial accounts after a diligent search, beyond what he has already provided. *Id.*, Ex. F at 6. Mr. Ruimi responded to RFP No. 7 by stating that he had no communication with accountants Weiss & Co. until the preparation of his 2017 income tax return and FBAR, and he was unaware of his responsibility to file FBARs before he retained Weiss & Co. and Roberts & Holland, LLP. *Id.*, Ex. F at 7-8. He also indicated his intention to review information provided by Weiss & Co. to the United States, provide anything he found to be missing, and provide a privilege log to the extent any documents are privileged. *Id.* According to the United States, Defendant has not produced a privilege log or asserted any privilege for withholding information. Dkt. # 22 at 7. In response to RFP No. 9, which seeks a copy of the advice Defendant relied on and which he contends supports his affirmative defense that his failure to file FBARs was not "willful," he responded that he was unaware of his responsibility to file FBARs and did not consult anyone for advice prior to retaining attorneys Roberts & Holland and Weiss & Co. *Id.*, Ex. B at 7.

ORDER - 6

**C.) Analysis**

The Court will first address the parties' dispute as to the temporal scope of the discovery to be produced by Defendant. In order to prevail in this matter, the United States must prove that Defendant had an interest in the foreign accounts at issue and that his failure to report his interests in those accounts was "willful" under 31 U.S.C. § 5321(a)(5). Dkt. # 1 ¶ 45; *see also United States v. Boyd*, 991 F.3d 1077, 1080 (9th Cir. 2021) (noting that Section 5321 "establishes two types of civil penalties depending on whether the violation was willful or non-willful."). The United States argues that Defendant cannot properly limit his discovery production to the "years at issue" (2011 – 2016), because the willfulness inquiry is not limited to a particular calendar year, even if Defendant's liability is limited to those years. Dkt. # 22 at 9. Defendant, on the other hand, argues that "the [willfulness] determination is to be made at the time each FBAR was required to be filed," Dkt. # 23 at 7-8, and any documents and communications falling outside of the 2011-to-2016 time frame are "irrelevant." *Id.* at 8. The Court does not agree with Defendant.

Documents and communications falling outside the "years at issue" are in fact relevant and material to the determination of willfulness, and the cases cited by the United States support this conclusion. For example, in *United States v. Bernstein*, the court stated plainly that "the willfulness inquiry is not limited to [the taxpayers'] conduct with regard to the 2010 tax year, even though the liability may be." 486 F.Supp.3d 639, 648 (E.D.N.Y. 2020). Indeed, the trial court made an explicit finding that "the history of [the taxpayers'] accounts leading up to [the 2010 FBAR penalty]" was highly persuasive evidence leading to partial summary judgment, *id.* at 641, and the taxpayers could not contend that such evidence was "irrelevant or immaterial," *id.* at 648, as Mr. Ruimi attempts to do so here. Each of the other cases cited by the United States, *United States v. Rum*, 995 F.3d 882 (11th Cir. 2021); *United States v. Horowitz*, 978 F.3d 80 (4th Cir. 2020); *Norman v. United States*, 942 F.3d 1111 (Fed. Cir. 2019); *United States v.*

ORDER - 7

*DeMauro*, 540 F.Supp.3d 157 (D.N.H. 2021); *United States v. Kelly*, Case No. 2:21-cv-12570, 2023 WL 3212718 (E.D. Mich. May 2, 2023), further support its position that documents and communications falling outside 2011 to 2016 are relevant to this matter, and in particular, the crucial willfulness inquiry.[1]

      Defendant's attempts to distinguish the cited cases fall short. This Court need not cabin each court's willfulness analysis by year when the decisions themselves make clear that a taxpayer's conduct occurring before and after an FBAR penalty are plainly relevant to the court's determination. *See, e.g. Norman v. United States*, 942 F.3d at 1113 (in evaluating willfulness, Court considered taxpayer's actions— such as withdrawing money in cash, providing instructions to bank on investing, and contacting UBS as reflected in client contact records— both before and after the single 2007 FBAR penalty year); *see also United States v. Goldsmith*, 541 F.Supp.3d 1058, 1066-79 (S.D. Cal. 2021) (Court noted taxpayer's decision-making as to Swiss bank account at issue for years 1989 to 2012 when considering failure to timely file FBARs for 2008, 2009, and 2010 calendar years). At bottom, what is clear is that each court heard evidence of taxpayers' conduct occurring before and after the years giving rise to FBAR penalties, and consequently, Mr. Ruimi has no basis to temporally limit his discovery production on this basis.

      Similarly, this Court finds unpersuasive Mr. Ruimi's argument that the remaining discovery requests, including those for foreign financial account documents, are unduly burdensome. Dkt. # 23 at 12. In support of this argument, Mr. Ruimi's counsel asserts that Mr. Ruimi's personal contacts at Baumann and Bank Leumi have provided him with "all of the documents that were available," which he then turned over in discovery. *Id.* However, Defendant's other assertions make clear that he only requested from Baumann

---

[1] Indeed, the first line of Mr. Ruimi's Opposition to the Motion to Compel states: "Mr. Ruimi's failure to file foreign bank account reports ("FBARs") was not willful." Dkt. # 23 at 1.

and Bank Leumi "bank statements for years 2011 through 2016." *Id.* at 2. Defendant does not explain how the United States' discovery requests are not relevant or not proportional to the needs of the case considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The United States' offer of assistance in connecting Mr. Ruimi with the banks' domestic legal counsel to facilitate the production (which Mr. Ruimi has apparently declined) further underscores that the outstanding discovery requests are not unduly burdensome.

Finally, the Court considers the potential privilege issues raised by the parties. While the United States correctly notes that "it is well established that a failure to object to discovery requests within the time frame constitutes a waiver of any objection," *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992), this Court does not find that Mr. Ruimi failed to offer any objection. To be sure, Defendant's objections to RFP Nos. 7 and 9 fall short of the specificity required by Rule 34. *See* Fed. R. Civ. P. 34(b)(2)(B). Nonetheless, Mr. Ruimi did indicate that he objected to the requests at least partially on the grounds of attorney-client privilege.

What Mr. Ruimi failed to provide, however, is a log as required by Rule 26. *See* Rule 26(b)(5). Defendant concedes that "[n]o privilege log was yet provided as Mr. Ruimi believes Plaintiff has not satisfied its burden to show any relevance to his state of mind when the FBARs were initially due of communications he had with professionals after he learned of his filing responsibilities." Dkt. # 23 at 14. Although the United States urges this Court to find that Mr. Ruimi has waived any privilege, this Court declines to do so. The Ninth Circuit has rejected a "*per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (setting forth various factors for consideration on a case-by-case basis). Because the

Court has now made clear that the documents sought by the United States in its RFPs are indeed relevant to this matter, and rejected Mr. Ruimi's attempt to temporally limit the scope of his production, he must now promptly provide a privilege log as required by the Rules.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Compel. Dkt. # 22. Defendant is ordered to provide complete responses to RFP Nos. 1, 2, 3, 5, 6, 7 and 9 within fourteen (14) days of the date of this Order. To the extent possible, Mr. Ruimi shall request that any documents be produced in English. Further, Mr. Ruimi is ordered to produce a privilege log compliant with Rule 26(b)(5) for all documents withheld on the basis of privilege within fourteen (14) days of the date of this Order.

Dated this 9th day of January, 2024.

The Honorable Richard A. Jones
United States District Judge