HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

            Plaintiff,

   v.

YORAM RUIMI,

            Defendant.

Case No. 2:22-cv-01576-RAJ

**ORDER**

## I.    INTRODUCTION and BACKGROUND

This matter comes before the Court on Plaintiff United States' ("United States" or "Plaintiff") Motion for Order to Show Cause, Dkt. # 27, and Motion to Compel. Dkt. # 34. Defendant Yoram Ruimi ("Mr. Ruimi" or "Defendant") opposes both motions, Dkt. ## 28, 38. The United States filed replies in support of their motions. Dkt. ## 31, 39. Defendant filed a surreply in opposition to Plaintiff's motion for order to show cause. Dkt. # 33. On May 24, 2024, the parties appeared for a telephonic hearing during which they presented oral argument on both motions. Dkt. # 40. At that time, the Court made several rulings on the record and indicated that the Court would issue an order

ORDER  - 1

memorializing its findings. *Id.* For the reasons that follow, the Court **GRANTS** the United States' Motion for Order to Show Cause and Motion to Compel.

Plaintiff United States filed this action to reduce to judgment unpaid civil penalty assessments made against Defendant for his failure to report his interest in foreign bank accounts for the calendar years 2011 through 2016, as required by federal law. Dkt. # 1 (Compl.). On May 15, 2023, Plaintiff served on Defendant its First Set of Interrogatories and Requests for Production (RFPs). Dkt. # 22-1 ¶ 2, Ex. A. On January 9, 2024, this Court granted Plaintiff's Motion to Compel, ordering Defendant to provide complete responses to RFP Nos. 1, 2, 3, 5, 6, 7 and 9 (which sought various records related to Defendant's foreign bank accounts and communications with financial advisors and tax preparers) and a privilege log compliant with Rule 26(b)(5) for all documents withheld on the basis of privilege within fourteen (14) days of the date of the order. Dkt. # 26. On January 23, Defendant submitted his Third Supplemental Responses. Dkt. # 29 (Declaration of Ellen Brody ISO Opposition to Motion for Order to Show Cause) ¶ 3. On January 24, 2024, Defendant produced emails from Defendant to U.S.-based counsel for foreign-based Bank Leumi, Baumann & Cie, Banquiers ("Baumann"), and Bank Pictet dated January 22, 2024, which was the day before Defendant was required to provide complete responses pursuant to the court order. Dkt. # 27-1 (Declaration of Julia Glen ISO Motion to Show Cause), ¶ 6, Ex. C. Although the emails appear to have attachments, Defendant did not produce the attachments. *Id.* On January 25, 2024, Plaintiff sent a deficiency letter identifying alleged deficiencies with Defendant's production and privilege log. *Id.* ¶ 3, Ex. A. Defendant responded via letter on January 25, 2024, but did not produce any further documents or a revised privilege log. *Id.* ¶ 4, Ex. B. Defendant emailed Plaintiff on January 30 requesting further clarification of Plaintiff's difficulties with the production. Dkt. # 29 ¶ 5. On February 7, Plaintiff filed a motion for order to show cause requesting sanctions against

Defendant and seeking to have the case stayed until Defendant complies with this Court's order.[1] Dkt. # 27.

Plaintiff served its second set of requests for production on February 22, 2024. RFP No. 10, the only request, seeks records for Defendant's U.S.-based financial accounts. Dkt. # 35 (Declaration of Kimberly Parke ISO Motion to Compel) ¶ 2, Ex. A. Defendant responded to Plaintiff via letter on March 15, 2024 objecting to the lack of a timeframe in Plaintiff's request and questioning the relevance of domestic records in relation to foreign bank account penalty litigation. Dkt. # 35 ¶ 4, Ex. B. In a March 20, 2024 call, Plaintiff indicated a willingness to limit the time frame of the request from 2000 to the present, and Defendant requested a 30-day extension to respond. *Id.* ¶ 5. However, because discovery was due to close on April 22, Plaintiff refused to agree to an extension. *Id.* ¶ 6. On March 25, Defendant wrote to Plaintiff stating that Defendant had no relevant materials in his possession or control, and noted the challenges faced by Defendant in obtaining U.S. bank records from decades earlier while living in Israel. *Id.* ¶ 8, Ex. C. Defendant again asked Plaintiff to join in requesting a continuance. *Id.* Plaintiff sent a letter to Defendant on March 27, and on April 5, Defendant provided a response to RFP No. 10. *Id.*, Ex. D, E. In his response, Defendant objected to the request as overly broad, irrelevant, and not likely to lead to discoverable evidence because the IRS assessed FBAR penalties for the years 2011 to 2016. *Id.*, Ex. E. Defendant asserts that, to the best of his knowledge, his accounts at Merrill Lynch were closed in in 2002 and Merrill Lynch does not keep any records beyond seven years. *Id.* According to Defendant, his former tax preparer Sandy Ekelman managed Defendant's bank accounts at Merrill Lynch, RBC, and Ally Bank from 2001 to 2019, but he has no documents from

---

1. In response to the parties' joint motion for an extension of time to complete discovery and amend order setting trial dates and related dates, Dkt. # 36, this Court struck the trial date and remaining pretrial deadlines, to be reset after the resolution of the parties' discovery dispute. Dkt. # 37.

Ms. Ekelman, and he has not spoken to her since 2019. *Id.* Plaintiff alleges that this response is deficient, and filed a motion to compel on April 11, 2024.[2] Dkt. # 34.

## II.    LEGAL STANDARD

The Court has broad discretion to control discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011); *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). That discretion is guided by several principles. Most importantly, the scope of discovery is broad. A party must respond to any discovery request that is not privileged and that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If a party refuses to respond to discovery, the requesting party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).

## III.    DISCUSSION

### A.) Motion for Order to Show Cause (Dkt. # 27)

Plaintiff seeks sanctions against Defendant for his alleged failure to produce documents in accordance with this Court's January 2024 order. Specifically, Plaintiff requests that this Court find that Ms. Ekelman sent Defendant copies of his 2008-2019

---

2. Plaintiff acknowledges that the timing of the motion to compel is not in compliance with this Court's Order Setting Trial Date and Related Dates, Dkt. # 17, which requires that all discovery-related motions be noted for the Friday before discovery closes pursuant to Local Rule 7(d)(3). Dkt. # 34 at 2 n. 1. However, given the parties' extensive communication in an attempt to avoid seeking judicial intervention, this Court will consider Plaintiff's motion timely in light of the circumstances.

tax preparation materials and impose a negative inference that Defendant destroyed copies of those documents. Dkt. # 27 at 10. Further, Plaintiff requests that this Court find that Defendant's first, third, fourth, fifth, and seventh affirmative defenses are prohibited and stricken pursuant to Federal Rule 37(b)(2)(A)(ii) due to his delay and refusal to comply with discovery requests, arguing that the United States cannot adequately respond to the defenses in the absence of Defendant's compliance. *Id.* Finally, Plaintiff argues that this Court should find that Defendant has waived privilege objections and order Defendant to produce all documents withheld and listed in his privilege log. *Id.* at 14.

### a.  Response to RFP Nos. 1, 2, 3, and 5

According to Plaintiff, Defendant's supplemental production in response to this Court's order was insufficient. Dkt. # 27 at 3. RFP Nos. 1, 2, 3, and 5 seek records such as banker's notes, account opening documents, statements, and correspondence from Bank Leumi, Baumann, and Bank Pictet, and documents from any foreign financial accounts in which Defendant has an interest. Dkt. # 22-1 Ex. A at 3; *see also* Dkt. # 26 at 8-10. Defendant responds that communication is still ongoing between himself and the foreign banks, and that the banks have requested further documentation from Defendant. Defendant also notes that he lives in Israel, his children have been called into active service in the Israeli army, and the ongoing Israel-Hamas conflict has made it difficult for him to timely obtain requested documents. Dkt. # 28 at 3. However, according to Plaintiff, Baumann has produced over 3,000 records to Defendant (which have not been produced to the United States), and Bank Pictet provided a waiver to Defendant that he has failed to sign and return. Dkt. # 40. Apparently, Defendant has failed to provide the Baumann records to his counsel for review and production.

Plaintiff further alleges that Defendant has failed to produce documents related to previously unidentified foreign accounts at UBank in Israel, LGT Bank in Switzerland, and Credit Suisse. Dtk. # 27 at 4. According to Plaintiff, Defendant produced account

opening documents from UBank and LGT Bank and an email from Israeli-based Pioneer Wealth Management, but no further related records. Defendant states that Pioneer provides only advice regarding Defendant's UBank account and IRA and has no account records. Additionally, Plaintiff received information from Credit Suisse suggesting that Defendant does in fact have an account there. Dkt. # 40. Plaintiff turned this information over to Defendant in an attempt to assist Defendant in requesting any records held by Credit Suisse. However, Defendant maintains that he has no account at Credit Suisse and argues that the information from Plaintiff does not show the existence of an account in Defendant's name. Dkt. # 40.

Having considered the parties' pleadings and the arguments presented by counsel, this Court finds it appropriate to hold Defendant in contempt due to his failure to comply with this Court's January 9, 2024 Order. This Court's order was unambiguous and clear. In granting Plaintiff's first motion to compel, the Court ordered Defendant to produce, within fourteen (14) days, all documents responsive to the requests for production. Dkt. # 26. Instead of obtaining the requested information in a timely fashion, Defendant waited until the deadline was near to reach out to U.S.-based counsel for the foreign banks at which he held accounts. Further, it appears that Defendant received thousands of pages of records from Baumann several months ago, but has failed to provide them to Plaintiff.

Courts have inherent power to enforce compliance with their lawful orders through civil contempt. *Shilltani v. United States*, 384 U.S. 364, 370 (1966). "If a person disobeys a specific and definite court order, he may properly be adjudged in contempt." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.3d 1361, 1365 (9th Cir. 1987). Here, Defendant was aware of this Court's order and he sought responsive documents concerning his foreign accounts a few days before the deadline. This undermines any argument that the documents related to Defendant's foreign accounts are not within his custody and control. *See United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to

obtain documents upon demand."). However, once it was clear that Defendant could not comply with the order by the deadline, Defendant should have sought relief from this Court. Ultimately, "absent a stay, all orders and judgments of courts must be complied with promptly." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (citing *Maness v. Meyers*, 419 U.S. 449, 458 (1975)). That simply did not happen here.

Further, this Court does not find persuasive Defendant's argument that he is under no obligation to seek foreign account related records from Credit Suisse. Information produced by Credit Suisse (and shared, in redacted form, with Defendant) points to some sort of relationship between the bank and Defendant. Defendant cannot state definitively the nature of his relationship with Credit Suisse, and resists undertaking the necessary measures to ascertain what that relationship is. However, the existence of a relationship (and potentially, an account) at Credit Suisse is established, and any account-related documents would be clearly responsive to Plaintiff's requests and relevant to this matter. *See* Fed. R. Civ. P. 23(b)(1). The same is true of records from UBank and LGT Bank. Defendant argues that these records are not relevant to the instant matter because these accounts were opened in 2019 and 2020—after the FBAR penalties were assessed against Defendant. But this Court has already rejected Defendant's attempts to temporally limit the scope of discovery, *see* Dkt. # 26 at 7-9, and does so again here.

Defendant is therefore ordered to provide full and complete responses to RFP Nos. 1, 2, 3, and 5 by producing responsive records for accounts at Bank Leumi, Baumann, Bank Pictet, UBank, and LGT Bank within thirty (30) days of the date of this Order. Defendant is further ordered to produce all emails and attachments sent to counsel for any foreign banks (including Bank Leumi, Baumann, Bank Pictet, UBank, and LGT Bank) by June 3, 2024 at 12:00 p.m. Further, this Court orders Defendant to identify and fully explain the nature of his relationship with Credit Suisse. If Defendant is informed by Credit Suisse that he did not have an account at Credit Suisse and no documents related

1      to any relationship with the bank exist, he shall sign a declaration under penalty of

2      perjury verifying the same.

3
                                **b.  Response to RFP Nos. 6, 7, and 9**

4               According to Plaintiff, Defendant also failed to fully comply with this Court's

5      order to supplement his responses to RFP Nos. 6, 7, and 9, which seek copies of his

6      communications with Ms. Ekelman, financial advisors, CPAs, and the like. Dkt. # 22-1,

7      Ex. A at 4. According to Plaintiff, in response to a third-party subpoena, in June 2023

8      Ms. Ekelman provided to the United States well-organized folders that included

9      communications, client requests, and other documents from the years 2000-2007. Dkt. #

10     22-1 ¶ 4. However, Ms. Ekelman indicated that documents from 2008 to 2019 had been

11     mailed to Defendant's home in Israel four years ago at Defendant's request. *Id.*

12     Defendant maintains that he has no other documentation from Ms. Ekelman and argues

13     that any folders or boxes sent to him by Ms. Ekelman would have domestic bank

14     documents, which Defendant argues are not relevant to this matter and not responsive to

15     Plaintiff's requests. Dkt. # 28 at 11.

16              The requests also seek communications upon which Defendant relied in asserting

17     his affirmative defenses that his failure to timely file FBARs was not willful. Dkt. # 27 at

18     5. Defendant produced emails from his CPA firm, Weiss & Co., and attorneys at Roberts

19     & Holland. Specifically, Plaintiff raises concerns that Defendant produced no emails

20     from his Gmail account that he has used to communicate with his wealth management

21     advisors and attorneys in Israel and failed to produce attachments to the email

22     communications that he did turn over to the United States. *Id.* As for the email

23     attachments, Defendant states that they have already been provided to Plaintiff as part of

24     documents forwarded by Weiss & Co. or were communications with the IRS that have

25     already been turned over. Dkt. # 27-1, Ex. B. Further, Defendant argues that he is not

       tech-savvy, and that to further compel production would require Defendant to produce

1  duplicative copies of email communications that Defendant's accountants previously

2  produced. Dkt. # 40.

3        Finally, Plaintiff argues that the privilege log provided by Defendant, Dkt. # 27-1

4  ¶ 6, Ex. D, does not comply with the Federal Rules of Civil Procedure, which require that

5  the party withholding information on the basis of a claimed privilege must "describe the

6  nature of the documents, communications, or tangible things not produced or disclosed"

7  in a manner that will "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

8  According to Plaintiffs, the log does not contain a description of the withheld documents,

9  and includes uninformative subject lines like "Re:," "Re:FYI," and "RE: Ruimi revised

10  amended returns" that do not allow Plaintiffs to assess Defendant's privilege claim. Dkt.

11  # 31 at 7; Dkt. # 27-1, Ex. E (Privilege Log). Defendant responds that he asserted no

12  boilerplate objections or blanket privilege claims, and that each email classified as

13  privileged are those analyzing and discussing legal issues with his counsel. Dkt. # 28 at

14  14.

15        The Court agrees that Defendant's production of communications—in particular,

16  emails from Defendant's Gmail account—is deficient. Defendant's assertion that he is

17  not tech-savvy and therefore unable to conduct a thorough search of his email account for

18  responsive emails does not relieve him of the obligation to properly search for responsive

19  documents. *Su v. United States Postal Service*, No. 3:23-cv-05007-RJB, 2023 WL

20  6290600, at *3 (W.D. Wash. Sept. 27, 2023) (motion to compel granted when defendant

21  failed to demonstrate that it conducted a proper search of key witnesses' emails).

22  Additionally, the privilege log produced by Defendant, Dkt. # 27-1, Ex. E, fails to

23  describe the nature of the documents not produced or disclosed and does not allow

24  counsel to make an assessment of Defendant's privilege claim, as required by the Rules.

25  *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dis. of Montana*, 408 F.3d

1142, 1148 (9th Cir. 2005) ("Still, the 'party must … provide sufficient information to

enable other parties to evaluate the applicability of the claimed privilege or protection.")

ORDER  - 9

(citing Fed. R. 26(b)(5)). Therefore, this Court orders Defendant to fully respond to RFP Nos. 7 and 9, which seek communications between Defendant and tax and finance professionals, and a copy of the advice that Defendant has relied upon or that he contends supports his affirmative defenses concerning willfulness within thirty (30) days. Dkt. # 22-1, Ex. A. Defendant shall conduct a thorough search of his email accounts, including his Gmail account, for all responsive documents and produce such responsive documents within thirty (30) days. Further, Defendant shall produce a revised privilege log that contains sufficient information concerning each withheld document allowing Plaintiff to assess the asserted privilege claim. This revised privilege log shall be produced within thirty (30) days of the date of this order.

     As to Defendant's tax preparation materials previously in the possession of Ms. Ekelman requested in RFP No. 6, this Court declines to make a negative inference against Defendant and find that Defendant purposely destroyed any records dated after 2007. However, this Court will order Defendant to make a good faith search for records received from Ms. Ekelman and produce any responsive documents within thirty (30) days. If Defendant continues to assert that such documents from Ms. Ekelman do not exist or are not in Defendant's possession, Defendant shall provide a declaration, signed under penalty of perjury, stating the same.

### B.) Motion to Compel (Dkt. # 34)

     The United States moves for an order compelling Defendant to answer RFP No. 10, which states:

> "**10.**    Please produce all records for all United States financial accounts in which Yoram Ruimi held a financial interest or over which Yoram Ruimi possessed signatory authority, including internal banker's notes, visit reports, account opening documents, monthly statements, annual statements, and all correspondence, including all communications regarding tax compliance, FATCA, and any requests for evidence of tax compliance."

Dkt. # 35, Ex. A at 2.

1
2
3
4
5
6
7

Plaintiff argues that evidence of Defendant's domestic bank accounts is relevant to a willfulness determination and that there is reason to believe that Defendant transferred money from U.S.-based accounts to foreign ones. Dkt. # 34 at 7-8. Defendant argues that any U.S. bank activity after 2019 can have no bearing on the willfulness of Defendant's actions from 2011 to 2016. Dkt. # 38 at 5-7. Further, Defendant represents that he has no responsive documents, and that banks destroy their records after seven years, making it impossible for him to obtain any earlier records. *Id.*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

This Court finds the documents requested in RFP No. 10 to be relevant to the instant matter. As Plaintiff points out, courts have analyzed the source of taxpayer funds, movements from foreign to domestic accounts (and vice-versa) and disparities between domestic and foreign holdings in making willfulness inquiries. *See, e.g., United States v. Horowitz*, 978 F.3d 80, 89 (4th Cir. 2020) (Court considered that taxpayers held a significant portion of their savings in foreign accounts and failed to disclose interest income from foreign accounts while reporting interest earned from domestic accounts in its willfulness inquiry); *see also United States v. Reyes*, 21-CV-5578 (MKB), 2024 WL 437096, at *4 (E.D.N.Y. Jan. 10, 2024) (Court considered that taxpayer held significant percentage of net worth abroad and instructed foreign bank not to invest in U.S. securities in willfulness determination). This Court again rejects Defendant's attempts to limit the temporal scope of his required production. Defendant shall provide a full and complete response to RFP No. 10 within thirty (30) days of the date of this order. Defendant shall contact Merrill Lynch, Ally Bank, RBC, and any other domestic banks at which he held or currently holds accounts and request all responsive documents held by those banks going back to the year 2000. If any bank indicates that it does not possess records beyond seven years, Defendant shall provide proof of this policy to Plaintiff.

24
25

//
//
//

ORDER  - 11

IV.     CONCLUSION

Plaintiff's motion for an order to show cause (Dkt. # 27) is:

- **GRANTED** as to Plaintiff's Request for Production Nos. 1, 2, 3, 5, 6, 7, and 9; and

- **DENIED** without prejudice as to Plaintiff's request that this Court find that Defendant destroyed communications from Sandy Ekelman and Plaintiff's request to strike Defendant's affirmative defenses 1, 2, 3, 4, and 5.

Plaintiff's second motion to compel (Dkt. # 34) is:

- **GRANTED** as to Plaintiff's Request for Production No. 10.

At this time, the Court declines to impose sanctions or award costs, but sanctions may be imposed in the future should Defendant continue to disregard this Court's orders.

Dated this 5th day of June, 2024.

The Honorable Richard A. Jones
United States District Judge